**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**SECURITY MUTUAL LIFE INSURANCE**
**COMPANY OF NEW YORK,**

                        **Plaintiff,**

        v.                                          3:09-CV-0316

**KENNETH A. SHAPIRO, as Trustee of the**
**Robert Bangert Irrevocable Life Insurance**
**Trust dated April 5, 2007, and THE ROBERT**
**BANGERT IRREVOCABLE LIFE INSURANCE**
**TRUST DATED APRIL 5, 2007,**

                        **Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

**I.      INTRODUCTION**

      Plaintiff commenced this action in New York state court seeking a declaration that the life insurance policy it issued to the Robert Bangert Irrevocable Life Insurance Trust Dated April 5, 2007 was "void *ab inito*, rescinded, cancelled, void and set aside." Compl. p. 10 (attached to Not. of Removal, dkt. #1). Defendants removed this action to federal court based on diversity jurisdiction, see Not. of Removal, dkt. #1, and now move to dismiss the action for lack of personal jurisdiction over the defendants and improper venue, or, in the alternative, to transfer venue to the United State District Court for the Northern District of Georgia. See Motion, dkt. # 13.   For the reasons that follow, Defendants' motion is denied.

## II.     STANDARDS OF REVIEW

When the Court is presented with a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), Plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of personal jurisdiction over defendant." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986). "[I]f the court holds an evidentiary hearing . . . the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence." Id.

> Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits. Arrowsmith v. United Press International, 320 F.2d 219, 223 (2d Cir. 1963) (*en banc*). Although . . . the plaintiff has the ultimate burden of establishing jurisdiction over a defendant by a preponderance of the evidence . . . until an evidentiary hearing is held, it need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists. . . . Those documents are construed in the light most favorable to plaintiff and all doubts are resolved in its favor.

Id. at 365; see also DLJ Mortgage Capital, Inc. v. Cameron Financial Group, Inc., 2007 WL 4325893, at * 3 (S.D.N.Y. Dec. 4, 2007).[1]

---

[1] ("On a motion to dismiss, the plaintiff need only make a prima facie showing that jurisdiction exists, see Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007), and because there has been no discovery in this case, Plaintiff also "need only make 'legally sufficient allegations of jurisdiction' through its pleading[s] and affidavits in order to survive a motion to dismiss." Treeline Inv. Partners, LP v. Koren, No. 07 Civ.1964, 2007 WL 1933860, at *2 (S.D.N.Y. July 3, 2007) (quoting In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir.2003) (*per curiam*)). For purposes of a Rule 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light most favorable to [Plaintiff], resolving all doubts in [its] favor." DiStefano v. Carozzi North Am., Inc., 286 F.3d 81, 84 (2d Cir.2001).").

The Court employs the same standard of review on a Rule 12(b)(3) dismissal motion alleging improper venue as it does on a Rule 12(b)(2) motion. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005).

A motion to transfer venue on the grounds of inconvenience to the parties and witnesses is governed by 28 U.S.C. § 1404(a). This provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

In addressing a motion pursuant to Section 1404(a), the Court should consider the following factors: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006). "A balance of these factors will identify the more appropriate forum." Employers Ins. of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008). The party seeking transfer bears the burden of demonstrating that transfer is warranted.

## III.     BACKGROUND

The following relevant facts are taken from complaint, the documents attached to the complaint, and the affidavits submitted in this matter.

In April of 2007, the "Robert Bangert Irrevocable Life Insurance Trust Dated April 5, 2007" ("Trust") was formed to obtain a life insurance policy insuring the life of Robert Bangert, a resident of Erie County, New York.  The insurance policy was to name Robert Bangert's son, David Bangert, as the beneficiary of the life insurance policy.  David Bangert resides in Erie County, New York.  The trustee selected for the Trust, Kenneth A. Shapiro, is an attorney practicing and residing in the State of Georgia.

Robert and David Bangert executed documents necessary for the formation of the Trust in Erie County, New York.  Shapiro executed documents necessary for the formation of the Trust in Fulton County, Georgia.  The Trust Agreement contained a clause by which Robert Bangert (the grantor), David Bangert (the beneficiary), and Shapiro (the trustee) consented to jurisdiction and venue in the Superior Court of Fulton County, Georgia for disputes arising from administration of the Trust.

On May 14, 2007, Robert Bangert and the Trust, acting through Shapiro, applied to Security Mutual Life Insurance Company of New York ("Security Mutual") for a $1.5 million life insurance policy insuring Robert Bangert's life.  Security Mutual is a corporation organized and existing under the laws of the State of New York with its principal place of business in Binghamton, New York.  Pursuant to the application process, Robert Bangert and Shapiro submitted numerous documents, including medical and financial disclosures relative to Robert Bangert. The documents were submitted to Plaintiff in New York.  The documents executed by Robert Bangert were signed in the State of New York.  In addition, Robert Bangert and Shapiro submitted to Security Mutual as part of the application process certain documents relative to Robert Bangert's financial circumstances that had been prepared by a

New York accountant. Shapiro and Robert Bangert also signed and transmitted to the Plaintiff a "Trust Certification" form. Provision "4" of the Trust Certification reads: "Neither the Company nor anyone acting on behalf of the Company is responsible to determine the authority of the Trustee(s) or inquire into or review the provisions of the Trust and shall not be charged with knowledge of the terms of the trust." (Compl. Ex. B).

On June 11, 2007, Security Mutual issued life insurance policy no. 001310886 ("Policy") from its New York home office. The policy insured Robert Bangert's life in the amount of $1.5 million. On July 23, 2007, Shapiro paid the first annual premium under the Policy to Security Mutual in the amount of $73,740.00. Robert Bangert died of cardio-respiratory failure on April 16, 2008. The Trust, through Shapiro, submitted a claim for death benefits under the Policy to Security Mutual on June 11, 2008. Security Mutual then conducted a standard claims investigation.

Security Mutual alleges that during the course of the claims investigation, it learned for the first time that Robert Bangert and Shapiro's responses to portions of the Policy application addressed to Robert Bangert's medical condition and financial circumstances were false, incorrect and incomplete. Plaintiff commenced the instant litigation seeking rescission of the Policy.

### III.     DISCUSSION

#### a.     Personal Jurisdiction

"In a diversity case, the issue of jurisdiction is governed by the law of the forum state." DLJ Mortgage, 2007 WL 4325893, at * 3 (citing D.H. Blair, 462 F.3d at 104). The exercise of jurisdiction must also comport with constitutional due process. See id.  Plaintiff

asserts that personal jurisdiction over Defendants is supported, *inter alia*, by Section 302(a)(1) of New York's long arm statute, N.Y.C.P.L.R. § 302(a). This provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state."

Section 302(a)(1) has two prongs: first, the transaction of business within New York State, and second, that the claim arises from that transaction of business. See McGowan v. Smith, 52 N.Y.2d 268, 271 (1981). "CPLR 302(a)(1) jurisdiction is proper 'even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007) (quoting Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71 (2006)). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Fischbarg, 9 N.Y.3d at 380 (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967); see also CutCo, 806 F.2d at 365 ("A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.") (internal quotations, citations, and alteration omitted). "It is well-settled that CPLR 302(a)(1) is a 'single-act' statute, meaning that 'proof of one transaction in New York is sufficient to invoke jurisdiction [under 302(a)(1)], even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" Salomon Smith Barney, Inc. v. McDonnell, 201 F.R.D. 297, 303 (S.D.N.Y.

2001)(quoting PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir.1997), in turn citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)).

Both Shapiro and the Trust purposefully availed themselves of the privilege of conducting activities within New York by applying for, agreeing to purchase, and paying for a life insurance policy from a New York insurance company.  The Trust, acting through Shapiro, sent various trust documents to the Plaintiff in New York, transmitted numerous documents to the Insured and Plaintiff in New York as part of the life insurance application process, paid the Policy's annual premium of $73,740 to Plaintiff in New York, and signed the Application Amendment which was transmitted into New York. See Compl. ¶¶ 3, 11, 12, 14, 15, 29, 25, 27, 29, 30, 32, 36, 37, 41.

The fact that the transaction occurred by telephone calls, facsimile transmission of documents, and the delivery of documents into New York but without the physical presence of Shapiro in the State is of no moment.  "New York law has moved away from the requirement of having a physical meeting in order to exercise jurisdiction." DLJ Mortgage, 2007 WL 4325893, at *4, fn. 10 (citing Fischbarg v. Doucet, 38 A.D.3d 270 (N.Y. App. Div. 1st Dep't 2007) (upholding jurisdiction in an action by any attorney for nonpayment of fees against out-of-state clients who transacted business with the attorney solely by phone, fax, and email); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir.1999) (observing that "lawyers and other professionals today transact business with their pens, their fax machines and their conference calls-not with their feet")).  "Courts will sustain jurisdiction based solely on telephone calls and facsimile communications in cases where the

communication clearly shows that the defendant intended to project itself into New York commerce." Serio v. Surge Resources, Inc., 2006 WL 559460, at *4 (S.D.N.Y. March 7, 2006). By purchasing the Policy, Defendants took advantage of the protection of the laws of New York governing the conduct of Security Mutual and the administration of the Policy, see e.g. Alliance of American Insurers v. Cuomo, 854 F.2d 591, 600 (2d Cir. 1988)( "New York has set up a comprehensive plan of regulation of insurance companies ..., legislat[ing] on a matter of special state concern . . . ." ), and transacted business in New York. See Serio, 2006 WL 559460, at *4 (finding long-arm jurisdiction under § 302(a)(1) where defendant engaged in negotiations by facsimile and telephone from New Hampshire with New York insurance company to arrange for workers' compensation insurance); Opticare Acquisition Corp. v. Castillo, 25 A.D.3d 238 (2d Dep't 2005) (employment contracts executed outside of New York with a New York company constituted the transaction of business in the state under C.P.L.R. 302(a)(1)). This satisfies the first prong of the § 301(a)(1) inquiry.

It was also Defendants' purposeful activities in New York that gave rise to the claim in issue in this action, thus satisfying the second prong of the § 301(a)(1) inquiry. See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006)(A claim "arises from" a transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted.")(citation omitted).

For these reasons, the Court finds that personal jurisdiction over Defendants is proper pursuant to § 302(a)(1). The Court now turns to the issue of whether the assertion of jurisdiction over Defendants comports with constitutional due process.

"Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not offend traditional notions of fair play and substantial justice." Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 127 (2d Cir. 2008) (internal quotations and citation omitted).

> To determine whether this is so, [the Court must] apply a two-step analysis in any given personal jurisdiction case. . . . First, [the Court must] ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction. . . . If the defendant has sufficient minimum contacts, [the Court must] proceed to the second stage of the due process inquiry, and consider whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case.

Id. (internal quotations and citations omitted).

Here, the acts of negotiating for an insurance policy with a New York insurance company, purchasing and paying for the policy, and then filing a claim under the policy constitute sufficient minimum contacts to satisfy the first step of the due process inquiry. See National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C., 319 F. Supp.2d 352, 359 (S.D.N.Y. 2004)(Sufficient minimum contacts were present where defendant's agent solicited, negotiated and executed an insurance contract with a New York insurer, met with representatives of the insurer, and submitted claims under the contract.); Security Ins. Co. of Hartford v. ITA Textiles Corp., 2000 WL 1576879, at *4 (S.D.N.Y. Oct. 23, 2000) (minimum contacts were satisfied when the defendant deliberately reached into New York to engage a New York broker who then negotiated an insurance policy with a New York insurer); see also Serio, 2006 WL 559460, at *4 (due process was satisfied by defendant's request for, receipt of, and mailing of payments to a New York insurer for an insurance policy).

The same acts are sufficient to satisfy the second step of the due process inquiry. The Trust, through Shapiro, created "continuing obligations" between Defendants and Security Mutual, a resident of New York. Where a defendant "has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there . . . it is presumptively not unreasonable to require him to submit to the burdens of litigating in that forum as well." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Further, Defendants could have reasonably foreseen being haled into court in New York when they made a claim under a life insurance policy issued by a New York insurance company. See Arch Specialty Ins. Co. v. Entertainment Specialty Ins. Servs., 2005 WL 696897, at *6 (S.D.N.Y. March 24, 2005) (defendants could have reasonably foreseen being haled into court in New York when they retained a broker to procure an insurance policy from a company doing business from a New York office).

Therefore, the Court finds that, under the totality of the circumstances, due process is satisfied and the exercise of personal jurisdiction over Defendants is reasonable. Serio, 2006 WL 559460, at *4. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.[2]

### b. Venue

Defendants also move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), arguing that the action was brought in an improper venue because the Trust agreement's forum selection clause names the Superior Court of Fulton County,

---

[2] The Court need not reach the issue of whether Defendants' alleged acts constituted a tort which would support personal jurisdiction under N.Y.C.P.L.R. §§ 302(a)(2) or (3).

Georgia as the venue for disputes arising from the Trust.  In the alternative, Defendants seek a discretionary transfer to the Northern District of Georgia for the convenience of the witnesses and parties pursuant to 28 U.S.C. § 1404(a).

This action was commenced in the New York State Supreme Court, Broome County, and was removed to this Court by Defendants pursuant to 28 U.S.C. §§ 1332 (diversity of citizenship), 1441 (removal statute), and 1446 (removal procedure). See Notice of Removal [dkt. # 1].  Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  The United State District Court for the Northern District of New York embraces Broome County, New York.  In addition, "Section 1441 requires a basis for federal subject matter jurisdiction; thus, '[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.'" Sugar Creek Packing Co. v. Circle City Transport, Inc., 2008 WL 733011, at * 5 (D. Kan. Mar 18, 2008) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).  As indicated, Defendants assert that there is proper diversity jurisdiction, and Plaintiff has not challenged subject matter jurisdiction.

> In cases that have been removed pursuant to 28 U.S.C. § 1441(a), the removal statute – rather than the federal venue statute, 28 U.S.C. § 1391 -- governs venue.  Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665-66, 73 S. Ct. 900, 97 L. Ed. 1331 (1953); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 72 (2d Cir. 1998).  A party may not challenge venue of the removed case as of right, even if venue would have been improper had the case been initially brought in the district court. See Polizzi, 345 U.S. at 665-66; PT United, 138 F.3d at 65.

Donellan v. Ferag, Inc., 1999 WL 33111, at *1 (E.D.N.Y. Jan 22, 1999).

Thus, by removing the case to federal court as opposed to moving in the state court to dismiss the action for improper venue, Defendants have waived their challenge to outright dismissal of the action based on improper venue. Defendants' motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) is denied.[3]

Nonetheless, "Defendant[s]' removal of the case to this Court does not waive [their] right to seek a transfer under § 1404," including their right to request a discretionary transfer to a more convenient forum under § 1404(a). Donellan, 1999 WL 33111, at *1 (citing PT United, 138 F.3d at 65, 72-73; Kumarelas v.. Kumarelas, 16 F. Supp.2d 1249, 1256 (D. Nev.1998)). In addressing the motion to transfer, the Court considers the factors set forth in D.H. Blair, 462 F.3d at 106-07. See Standards for Review, Part II of this Decision and Order, *supra*, p. 3*.*

---

[3] Even assuming, *arguendo*, that Defendants could challenge the propriety of venue, their arguments for dismissal are without merit.

Venue is proper in the Northern District because "a substantial part of the events . . . giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(a)(2). The Policy was negotiated with, purchased from, and issued by Plaintiff from its Broome County, New York office. See Sacody Technologies, Inc. v. Avant, Incorporated, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994)(Section 1391(a)(2) "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action."); Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F. Supp. 1247, 1249 -1250 (S.D.N.Y. 1995) (a contract claim brought under a contract negotiated during telephone calls and facsimile transmissions between New York and Texas could be properly brought in New York).

Further, the forum selection clause in the Trust Agreement does not bind Plaintiff. See Novak v. Tucows, Inc., No. 07-CV-2211, 2009 WL 1262947, at *2 (2d Cir. May 6, 2009)(to determine whether to dismiss an action based on a forum selection clause, the Court considers "first, 'whether the clause was reasonably communicated to the party resisting enforcement'; second, 'whether the parties are required to bring any dispute to the designated forum'; and third, 'whether the claims and parties involved in the suit are subject to the forum selection clause.'")(quoting Philips v. Audio Active, Ltd., 494 F.3d 378, 383 (2d Cir. 2007)). Plaintiff was not a party to the Trust Agreement and, by its terms, the forum selection clause governs disputes between the Grantor, the Trustee, and the Beneficiary concerning the administration of the Trust. Moreover, Plaintiff expressly disavowed any knowledge of the terms of the Trust Agreement when it issued the Policy. See Trust Certification, Provision 4.

The first factor, the plaintiff's choice of forum, weighs in favor of retaining jurisdiction in this District. Plaintiffs chose New York as their forum, which decision is given considerable weight. D.H. Blair & Co., Inc., 462 F.2d at 107.

The second factor, the convenience of witnesses, weighs against transfer. "The convenience of non-party witnesses is one of the most important factors in determining where to transfer a case." Verilux, Inc. v. Ottlite Technologies, Inc., 2009 WL 2710222, at *6 (D. Conn. Aug. 20, 2009). Although Defendants correctly point out that Robert Bangert's treating physician does not reside in the Northern District of New York, they ignore the fact that the physician resides in Erie County, New York. Plaintiff also list five other probable witnesses - the Beneficiary, who was purportedly the "designated [insurance] agent participating in the transaction"; Robert Bangert's widow; Robert Bangert's accountant; "Vincent Montelione of Security Mutual;" and Plaintiff's underwriter Annette Lyght. Pl.'s Mem. 17. The first 3 purportedly reside in Erie County, New York, and the last two work at Plaintiff's Broome County, New York office. Erie County, New York is significantly closer to the Northern District of New York than to the Northern District of Georgia. Defendants have provided no reason why it would be more convenient for witnesses located in Erie County, New York to travel to the Northern District of Georgia than to the Northern District of New York. As a result, Defendants fail to meet their burden of establishing that the convenience of the witnesses weighs in favor of transfer.

The third factor, the location of relevant documents and relative ease of access to sources of proof, does not support transfer. Most of the relevant medical and financial documents are located in Erie County, New York. While it appears that many of the relevant

- 13 -

documents in this case are available electronically and are already in the possession of both parties, these documents will be relatively easier to access in the Northern District of New York than in Georgia.  See Samson Lift Technologies v. Jerr-Dan Corp., 2009 WL 2432675, at * (S.D.N.Y. Aug. 07, 2009)("Although this factor has lost some of its original significance with the improvements in transportation and communications technology, it should be considered to the extent that it bears on the convenience calculus.")(citing Brasseler USA Dental, L.L.C. v. Discus Dental, Inc., 2005 WL 1765706, at *4 (S.D.N.Y. July 25, 2005)("The cost of copying and transporting these materials to New York, although by no means substantial, is a cost that can be avoided by a transfer of venue.").

The fourth factor, the convenience of the parties, and the seventh factor, the relative means of the parties, are neutral.  "One party in this case will have to travel to litigate in an out-of-state forum, and granting a motion to transfer should not merely 'shift the burden of inconvenience from one party to the other.'"  ICG America, Inc. v. Wine of the Month Club, Inc., 2009 WL 2843261, at *11 (D. Conn. August 28, 2009) (quoting Pitney Bowes, Inc. v. Nat'l Presort, Inc., 33 F. Supp.2d 130, 132 (D. Conn.1998)).   While Defendants point out that Plaintiff is a very large corporation that can easily afford to litigate in Georgia, there is no claim that Shapiro is unable to travel to New York to defend this suit because of health, financial, or some other similarly compelling reason.  Without a showing of genuine hardship, these factors do not support or defeat transfer.

The fifth factor, the locus of operative facts, is also neutral. The facts concerning the application for and interpretation of the Policy are equally amenable to litigation in either

forum. The Court, therefore, finds that this factor does not weigh in favor of or against transfer.

The sixth factor, the availability of process to compel the attendance of unwilling witnesses, is also a neutral factor. While the parties would have to seek a subpoena from the United States District Court for the Western District of New York for any unwilling witness from Erie County whether litigated here or in Georgia, there is the possibility of deposition testimony for such witnesses wherever litigated. See Ernes N.V. v. Citgo Asphalt Ref. Co., 2009 WL 734029, at *7 (S.D.N.Y. Mar. 16, 2009) (finding the availability of process to compel witnesses a neutral factor because "there has been no indication that deposition testimony is not a viable alternative"); Citigroup Inc. v. City Holding Co., 97 F. Supp.2d. 549, 562 (S.D.N.Y. 2000) ("[T]he unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists.").

Other factors sometimes considered on transfer motions, such as calendar congestion and the forum's familiarity with the governing law, are also neutral and do not weigh in favor or against transfer. However, when the totality of the circumstance are considered, the Court finds that Defendants have not met their burden of establishing that the interests of efficiency and justice require transfer of this case to the Northern District of Georgia. Therefore, Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is denied.

**V.      CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss the action or to transfer it to the Northern District of Georgia [dkt. # 13] is **DENIED**.

**IT IS SO ORDERED.**

**Dated:September 11, 2009**

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge